DELAWARE CITIZENS FOR CLEAN AIR, INCORPORATED, a Delaware corporation, Plaintiff,

v.

STAUFFER CHEMICAL COMPANY, a Delaware corporation, Defendant.

Civ. A. No. 4597.

United States District Court,
D. Delaware,
Wilmington Division.

Dec. 12, 1973.

Jacob Kreshtool, and John S. Grady, Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff.

Arthur G. Connolly, Jr., Connolly, Bove & Lodge, Wilmington, Del., John T. Ronan, III, Stauffer Chemical Co., Westport, Conn., Robert L. Ackerly, Sellers, Conner & Cuneo, Washington, D.C., for defendant.

## OPINION

STAPLETON, District Judge:

Seeking an injunction and the recovery of damages, plaintiff, a non-profit Delaware corporation, has brought this action for alleged violations of the plan adopted by the State of Delaware under the Clean Air Act[1] to reduce the sulfur dioxide level in the ambient air in Delaware. Jurisdiction is asserted under the "citizen's suit" section of the Clean Air Act, 42 U.S.C. § 1857h–2(a).

Specifically plaintiff seeks to enforce Regulation IX, Section 3 of the Delaware State Air Implementation Plan which .relates to the control of sulfur dioxide emissions from sulfur recovery units and is asserted to require the reduction of sulfur dioxide emissions to no more than 2,000 ppm[2] by January 1, 1973. It is not disputed that defendant's plant in Delaware City, Delaware emits sulfur dioxide in excess of 2,000 ppm.

Stauffer contends that it is not in violation of Regulation IX, Section 3; that the Delaware Water and Air Resources Commission granted it a variance that postponed compliance to January 1, 1974 and that that variance was properly approved by the Administration on May 23, 1973. Defendant also attacks the jurisdiction of this Court asserting that plaintiff here is mounting a collateral attack on the legality of the Administrator's approval of the state granted variance exclusive jurisdiction of which is vested by statute in the circuit courts. 42 U.S.C. § 1857h–5(b)(1).

We consider here cross motions for summary judgment and plaintiff's alter-

1. 42 U.S.C. § 1857 et seq.

2. I. e., parts per million.

native motion for a preliminary injunction.

The Clean Air Act of 1970 contemplates a cooperative endeavor on the part of federal and state agencies to improve the quality of air in the country. Each state is given primary responsibility for assuring air quality within its borders by constructing a plan which specifies the manner in which national air quality standards, as established by the Administrator, will be achieved and maintained.[3] It is the responsibility of the Administrator to define air pollutants subject to regulation,[4] to promulgate primary and secondary air quality standards,[5] and to approve or reject in whole or in part state implementation plans.[6] Primary reliance for enforcement is left in the hands of the state; the Administrator, however, may issue a compliance order whenever a violation of an applicable implementation plan continues thirty days after the state authority has been notified of it and he may thereafter sue in the district court to enforce his order.[7]

On April 30, 1971 the Administrator promulgated primary and secondary ambient air quality standards for sulfur dioxide. It is not disputed that Delaware satisfied the national primary standards. As part of its total implementation plan, Delaware submitted a plan for the attainment of the secondary ambient air standard. The Act provides that such plan shall itself designate a "reasonable time,"[8] by which secondary standards shall be attained.

The construction of a final implementation plan was an involved process; the EPA approved the final plan submitted by Delaware on May 31, 1972.[9] The plan set a compliance date for the attainment of national secondary sulfur dioxide standards for January 1, 1973.

As part of its strategy for attaining this goal the state adopted a control strategy. The purpose of the control strategy is to permit the state to work in a planned, gradual way towards the attainment of the national secondary standard by the date which the plan establishes. The plan as adopted included a control strategy which required one in the position of Stauffer to reduce the mass exit rate for sulfur recovery units to 2,000 ppm of sulfur dioxide by January 1, 1973, the same date as that set by the plan for the attainment of the national secondary standard for sulfur dioxide levels in the ambient air.

Defendant petitioned the Secretary of the Department of Natural Resources and Environmental Control of the State of Delaware for a variance from this compliance date. Notice of a public hearing on this petition appeared in the September 21, 1971 issue of the Wilmington Morning News. The hearing was held twenty days later; it resulted in a denial of the variance by the Secretary on the basis that he was powerless to grant an extension of time under any circumstances for achieving compliance schedules contained in plans approved by the Administrator. On Appeal to the Water and Air Resources Commission[10] the Secretary conceded that sulfur dioxide emissions in New Castle County were sufficiently small so that:

> Non-compliance by Stauffer (with Regulation IX, Section 3 by January 1, 1973) would not interfere with the maintenance of the primary standard for sulfur dioxide in New Castle County.

Based on the record made at the Secretary's hearing and argument made at its hearing the Commission by its Order of October 27, 1972, reversed the decision of the Secretary and granted Stauffer a

3. 42 U.S.C. § 1857c–2(a).

4. 42 U.S.C. § 1857c–3.

5. 42 U.S.C. § 1857c–4.

6. 42 U.S.C. § 1857c–5(a)(2).

7. 42 U.S.C. § 1857c–8(a), (b).

8. 42 U.S.C. § 1857c–5(a)(2)(A)(ii).

9. See 37 Fed.Reg. 10842, 10856 (as amended by 37 Fed.Reg. 11827, 11914, 15082, 15532, 19808); 38 Fed.Reg. 13561, 13562, 14375.

10. 7 Del.C. § 6008.

variance from Regulation IX, Section 3 until January 1, 1974.

On May 23, 1973 the Administrator approved a revision of the compliance date for attainment of the secondary sulfur dioxide standard in Delaware from January 1, 1973 to January 1, 1974. By the same notice the Agency approved the Stauffer variance from that portion of the Delaware control strategy found in State Regulation IX, Section 3. 38 Fed.Reg. 13561, 13562;[11] 40 C.F.R. § 52.428.

The gist of plaintiff's attack on Stauffer's present right to emit sulfur dioxide in excess of 2,000 ppm is that the variance granted by the state and approved by the EPA is void because it was not preceded by "reasonable notice" as defined in 40 C.F.R. § 51.4[12] and that the validity of that variance can properly be attacked in the district court not-withstanding the provisions of 42 U.S.C. § 1857–5(b).[13] In its brief plaintiff argued collateral review of the Administrator's action is appropriate here because in amending the Delaware secondary sulfur dioxide standard attainment date and permitting the Stauffer variance the Administrator was not "approving or promulgating any implementation plan under Section 1857c–5," and, therefore, review of his action need not be exclusively in the court of appeals under § 1857h–5(b). At argument plaintiff introduced a new argument, asserting that the Administrator's action here was not a "revision" of an implementation plan under § 1857c–5(a)(3), review of which is governed by § 1857h–5(b) but is rather a "postponement" of compliance under § 1857c–5(f)[14] review of which is governed by the terms of that section.[15] While § 1857c–5(f)(2)(B) re-

---

11. Amended by 38 Fed.Reg. 14375.

12. 40 C.F.R. § 51.4 provides, among other things, that "reasonable notice . . . shall include, . . . at least 30 days prior to the date of such hearing:
 (1) notice given to the public by prominent advertisement. . . .

13. 42 U.S.C. § 1857h–5(b) provides in part:
 (1) . . . A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 1857c–5 of this title . . . may be filed only in the United States Court of Appeals for the appropriate circuit. . . .
 (2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement.

14. 42 U.S.C. § 1857c–5(f)(1):
 (f)(1) Prior to the date on which any stationary source or class of moving sources is required to comply with any requirement of an applicable implementation plan the Governor of the State to which such plan applies may apply to the Administrator to postpone the applicability of such requirement to such source (or class) for not more than one year. If the Administrator determines that—
 (A) good faith efforts have been made to comply with such requirement before such date,

(B) such source (or class) is unable to comply with such requirement because the necessary technology or other alternative methods of control are not available or have not been available for a sufficient period of time,
 (C) any available alternative operating procedures and interim control measures have reduced or will reduce the impact of such source on public health, and
 (D) the continued operation of such source is essential to national security or to the public health or welfare,
then the Administrator shall grant a postponement of such requirement.

15. (2)(A) Any determination under paragraph (1) shall (i) be made on the record after notice to interested persons and opportunity for hearing, (ii) be based upon a fair evaluation of the entire record at such hearing, and (iii) include a statement setting forth in detail the findings and conclusions upon which the determination is based.
 (B) Any determination made pursuant to this paragraph shall be subject to judicial review by the United States court of appeals for the circuit which includes such State upon the filing in such court within 30 days from the date of such decision of a petition by any interested person praying that the decision be modified or set aside in whole or in part. A copy of the petition shall forthwith be sent by registered or certified mail to the Administrator and thereupon the Administrator shall

quires appeal of an Administrator's decision to the Court of Appeals, since it does not contain the express prohibition on collateral attacks contained in § 1857h–5(b)(2), plaintiff argues that the Congressional purpose was clearly expressed to permit such collateral attacks in "postponement" decisions.

We find force in neither of plaintiff's proffered arguments.

We need search no further than the language of the statute itself for compelling evidence that Congress did not intend to draw the distinction between approval of a revision of an implementation plan under § 1857c–5(a)(3) and "approving or promulgating any implementation plan under § 1857c–5," for which plaintiff contends. Both sections 1857c–5(d)[16] and 1857c–5(c)[17] display clearly a Congressional intent to treat revisions and original plans uniformly. Moreover, since it seems clear that the affects on the environment of a revision of an implementation plan may well be substantial such a construction is consistent with the Congressional policy expressed in § 1857h–5(b)(1) that the judgment and procedures used in arriving at that decision be promptly and finally reviewed in the circuit court.

Plaintiff's alternative argument supporting the jurisdiction of this Court is that defendant's variance is in reality a "postponement" under § 1857c–5(f) which, it argues, can, in light of the provisions of § 1857c–5(f)(2)(B), be collaterally attacked in the district court. Defendant counters that the findings and citation of regulations in the Administrator's approval of the Delaware action make it altogether clear that he was treating that action as a request for a pre-attainment date revision under § 1857c–5(a)(3); that the Administrator proceeded properly in treating the variance under that section[18] in compliance with his own regulations, 40 C.F.R. § 51.32(f), and that, therefore, collateral review of that decision is foreclosed to this Court by § 1857h–5(b)(2). Moreover, it is asserted that the Administrator's decision to proceed under § 1857c–5(a)(3), even if that procedure was not legally available to him, merely gives a plaintiff a valid ground for challenging the validity of his action but does not itself change the forum in which such challenge can be made.

Insofar as relevant here, § 1857c–5(f) provides a procedure by which prior to the date on which any stationary source is required to comply with any require-

---

certify and file in such court the record upon which the final decision complained of was issued, as provided in section 2112 of Title 28. Upon the filing of such petition the court shall have jurisdiction to affirm or set aside the determination complained of in whole or in part. The findings of the Administrator with respect to questions of fact (including each determination made under subparagraphs (A), (B), (C), and (D) of paragraph (1)) shall be sustained if based upon a fair evaluation of the entire record at such hearing.

16. 42 U.S.C. § 1857c–5(d):
(d) For purposes of this chapter, an applicable implementation plan is the implementation plan, or most recent revision thereof, which has been approved under subsection (a) of this section, or promulgated under subsection (c) of this section and which implements a national primary or secondary ambient air quality standard in a State.

17. Section 1857c–5(c) provides for the necessary preconditions for the Administrator himself to promulgate an implementation plan. In requiring a hearing prior to such promulgation the statute provides:

If such State held no public hearing associated with respect to such plan (or revision thereof), the Administrator shall provide opportunity for such hearing within such State on any proposed regulation. The Administrator shall, within six months after the date required for submission of such plan (or revision thereof), promulgate any such regulations unless, prior to such promulgation, such State has adopted and submitted a plan (or revision) which the Administrator determines to be in accordance with the requirements of this section.

Certainly the publication "of a revision" is a "promulgation" under Section 1857h–5(b)(1).

18. Citing, National Resources Defense Council v. EPA, 478 F.2d 875 (1st Cir. 1973).

ment of an applicable implementation plan the Administrator, upon application of the Governor of the relevant state, and after hearings and specified findings may postpone the application of such requirement for not more than one year.[19] The findings required include a determination that "the continued operation of such source is essential to national security or to the public health or welfare." The Administrator has implemented § 1857c–5(f) through Reg. § 51.32.[20] Paragraph (f) of Reg. § 51.32 provides:

> (f) A State's determination to defer the applicability of any portion(s) of the control strategy with respect to such source(s) will not necessitate a request for postponement under this section unless such deferral will prevent attainment or maintenance of a national standard within the time specified in such plan: *Provided, however,* That any such determination will be deemed a revision of an applicable plan under § 51.6.

This paragraph defines a limited class of cases where a state has determined to defer applicability of a portion of a compliance schedule[21] and that deferral will not prevent attainment of a national standard by the date stated in the State's implementation plan. In this class of cases "such a determination will be deemed a revision of an applicable plan." For a revision to be granted under § 1857c–5(a)(3), a hearing after notice must have been held by the State. The Administrator is not required to hold independent hearings and the standard of review is not the more strict one found in § 1857c–5(f) but rather the standard which applies to applications for the approval of original implementation plans.

■ Here the Administrator amended the date in the Delaware plan for attainment of secondary sulfur dioxide standards to January 1, 1974. 40 C.F.R. § 52.428. Section 1857c–5(f) does not read on this sort of generally applicable change in an attainment date; this action was clearly a § 1857c–5(a)(3) revision and as such subject to attack only in the Court of Appeals. 42 U.S.C. § 1857h–5. We, accordingly, must accept the validity of that action. Given that action, the validity of the approval of the Stauffer variance turns necessarily upon the validity of Reg. § 51.32(f). If the procedure there permitted is permissible under the statute then the action of the Administrator was a "revision" under § 1857c–5(a)(3) not subject to collateral attack here. I conclude that the flexible procedure contemplated by Reg. § 51.32(f) is reasonable and within

---

19. See statute cited, *supra*, note 14.

20. § 51.32 *Request for 1-year postponement.*

  (a) Pursuant to section 110(f) of the Act, the Governor of a State may request, with respect to any stationary source or class of moving sources, a postponement for not more than 1 year of the applicability of any portion of the control strategy.

  (b) Any such request regarding sources located in an interstate region shall show that the Governor of each State in the region has been notified of such request.

  (c) Any such request shall clearly identify the source(s) and portion(s) of the control strategy which are the subject of such request and shall include information relevant to the determinations required by section 110(f) of the Act.

  (d) A public hearing will be held, before the Administrator or his designee, on any such request. No such hearing will be held earlier than 1 year in advance of the prescribed date for compliance with any such portion(s) of the control strategy.

  (e) No such request shall operate to stay the applicability of the portion(s) of the control strategy covered by such request.

  (f) A State's determination to defer the applicability of any portion(s) of the control strategy with respect to such course(s) will not necessitate a request for postponement under this section unless such deferral will prevent attainment or maintenance of a national standard within the time specified in such plan: *Provided, however,* That any such determination will be deemed a revision of an applicable plan under § 51.6.

21. Note that (f) requires a *state determination* whereas the earlier paragraphs of Reg. § 51.32 and the statute, 42 U.S.C. § 1857c–5(f), require only application by the Governor.

the power delegated to the Administrator. Given that a change of a control strategy will not interfere with attainment of a national standard by the date set forth in the plan and that the state has determined after notice and hearing that its original control strategy ought to be adjusted, we see no compelling reason why the Administrator cannot proceed under § 1857c–5(a). To hold otherwise would be to create an incentive for those formulating control strategies to establish more lenient time schedules than they might otherwise set. If every revision in a control strategy, whether or not it will prevent attainment of the national standard by the date specified in the plan, necessitated a federal hearing and review by § 1857c–5(f) standards, it could be expected that states would approach the setting of ambitious control strategies with great caution. Regulation 51.32(f) avoids this pitfall and, at the same time, provides maximum state involvement in control strategy revisions which will not interfere with attainment of a national standard. *Cf.* National Resources Defense Council, Inc. v. EPA, 478 F.2d 875, 887 (1st Cir. 1973). This encourages the federal-state partnership which the entire structure of the Clean Air Act, as outlined above, was designed to create.

Moreover, Reg. § 51.32(f) leaves a wide ambit for the operation of § 1857c–5(f): it is properly invoked whenever an adjustment to a compliance schedule would interfere with the attainment of a national standard. In such cases the limited postponement and the requirement that the Administrator himself hold the hearing that § 1857c–5(f) contemplates are most appropriate.

■ I hold that the Administrator properly treated the request for approval of the state granted variance as a revision of the Delaware implementation plan under 42 U.S.C. § 1857c–5(a) and 40 C.F.R. § 51.32(f) and that review of the merits of that determination is a question beyond the jurisdiction of this Court. Moreover, I am persuaded that even if this matter was required by the Act to be treated as a "postponement" under § 1857c–5(f) that this Court would not have jurisdiction to review the determination made. The statutory section which provides for review of "postponement" decisions under § 1857c–5(f) provides, in part:

(2)(B) Any determination made pursuant to this paragraph shall be subject to judicial review by the United States court of appeals for the circuit which includes such State upon the filing in such court within 30 days from the date of such decision of a petition by any interested person praying that the decision be modified or set aside in whole or in part. 42 U.S. C. § 1857c–5(f)(2)(B).

While nothing in this section expressly prohibits collateral attacks in the district court upon an administrator's action, the Congressional policy of quickly and finally determining the propriety of his action would, I think, be substantially undercut by permitting such action. Nothing in the legislative history or the arguments of counsel persuades me that Congress intended to so limit the effectiveness of its limited review procedure.

A final point remains. The original implementation plan called for defendant to comply with the 2,000 ppm emission standard by January 1, 1973. Prior to that time the State granted defendant a variance. That variance was not approved by the EPA until May 23, 1973. During the period from January 1, 1973 to May 23, 1973 the defendant was, under the authority of a State granted variance, operating in violation of the existing federally approved plan. Plaintiff asserts a right to damages for this alleged violation of federal law.

■ This claim involves no attack direct or collateral upon action of the Administrator. Indeed it is predicated upon a regulation validly approved by the Administrator at the time of his adoption of the original Delaware plan. Accordingly, this Court is not foreclosed by anything in the Act from passing on this phase of the case.

Plaintiff relies upon the holding of this Court in Getty Oil (Eastern Operations) v. Ruckelshaus, 342 F.Supp. 1006, 1018 (1972):

> . . . The Administrator is duty bound to enforce an approved implementation plan. Revisions of a plan, including any deferrals of an applicable compliance schedule, do not become part of an applicable plan until approved by the Administrator.

This view was approved by the Third Circuit Court of Appeals. 467 F.2d 349 (1972).

Defendant contends, however, that the later case of Duquesne Light Co. v. EPA, 481 F.2d 1 (3rd Cir. 1973) indicates that under the facts of this case (1) the Administrator, absent the procedure specified in Duquesne and not involved here, could not himself have enforced Regulation IX against defendant between January 1, 1973 and May 23, 1973 and (2) plaintiff, accordingly, should not be permitted to recover damages for that period.

The holding in the Duquesne case is not applicable here. In that case the court held that "a review of the proceedings conducted by the Pennsylvania Environmental Quality Board [on the original Pennsylvania Plan] does not convince us that a truly meaningful hearing was afforded Duquesne and St. Joe. . . ." 481 F.2d at 9. The court understandably felt that "to expose the companies to the risk of punishment without affording them full occasion to express their objections to the state implementation plan is fundamentally unfair." 481 F.2d at 10. The problem in Duquesne concerned the enforcement of a requirement as to which the objections of the plaintiffs had not been adequately heard at the state or federal level. In this case, however, the defendant does not argue, and nothing in the record

suggest, that it was not given adequate opportunity to express its views in connection with the adoption of Regulation IX and the Delaware Plan.

Having said that the holding in the Duquesne case was predicated on a materially different fact situation, one must acknowledge that some of the language in the opinion may have been intended to narrow the holding in Getty. I need not here decide the point, however. I assume, for present purposes that under the Getty case the defendant had a legal obligation to comply with Section 3 of Regulation IX until such time as its variance was approved by the Administrator and that the Administrator could have enforced it during the period here in question.

■ I likewise assume without deciding that there is a private right to damages under the "citizens suit" section of the Act, § 1857h–2, and that such a right could be properly invoked by an injured party on the facts of this case. I am confident, however, that the citizen's suit section of the Clean Air Act was not intended to authorize the payment of damages to an environmental group for injuries to its members.

The pleadings here allege only injuries to the members of plaintiff's organization.[22] We do not question plaintiff's standing to seek injunctive relief on behalf of its members. Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). But an award of compensatory damages presents a quite different question. This action was not brought as a class action and there was no attempt to comply with the procedures of Rule 23.

The potential for injustice in permitting such a recovery is both apparent and grave. Plaintiff represents that any recovery will be used to pursue its admittedly praiseworthy organizational

---

22. Plaintiff alleges that:
   (a) Its members, to sustain their lives, are required to breathe air which is adversely affected by the defendant's violation of the Clean Air Act hereinafter alleged, to its member's detriment,
and that:

   (b) Its members live in Delaware and are required to expose their property and plant life to air which is adversely affected by the defendant's violation hereinafter alleged, to its member's detriment.

goals.[23] A worthy purpose, however, will not justify what would amount to a forced contribution by any member of the organization who may have suffered injury. Moreover, since individual members who might have sustained injuries as a result of defendant's violation are not parties to this suit and are not bound by any judgment entered here, defendant would not be protected by the satisfaction of any judgment here against suits hereafter brought by those persons for redress of such injuries.

The award of damages which plaintiff seeks is supported by no pleading alleging injury to it. Recovery of damages by plaintiff, even if such a recovery is permitted under the Act, is not appropriate.

For the reasons stated herein, defendant's motion for summary judgment must be granted. The above shall constitute this Court's findings of fact and conclusions of law.

Submit order.

23. In the alternative, plaintiff suggests that appropriate damages be awarded to the State of Delaware for utilization in its air pollution control program. This presents the same problems as an award directly to plaintiff.