**DELAWARE CITIZENS FOR CLEAN AIR, INCORPORATED, a Delaware corporation, Plaintiff,**

v.

**STAUFFER CHEMICAL COMPANY, a Delaware corporation, Defendant.**

**Civ. A. No. 4597.**

United States District Court,
D. Delaware.

April 8, 1974.

Jacob Kreshtool, and John S. Grady, of Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiff.

Arthur G. Connolly, Jr., of Connolly, Bove & Lodge, Wilmington, Del., John T. Ronan, III, of Stauffer Chemical Co., Westport, Conn., Robert L. Ackerly, of Sellers, Conner & Cuneo, Washington, D. C., for defendant.

## OPINION

STAPLETON, District Judge:

In this suit, plaintiff, a non-profit citizen's group, challenged the right of defendant, Stauffer Chemical Co. ("Stauffer"), to emit sulphur dioxide into the air in excess of 2,000 parts per million. The basis for the challenge was that such action violated the plan adopted by the State of Delaware and approved by the Environmental Protection Agency pursuant to the Clean Air Amendments of 1970, 42 U.S.C. § 1857 et seq. On cross motions for summary judgment this Court denied plaintiff all relief, dismissing the complaint, in part for lack of jurisdiction over the subject matter, and in part on grounds of mootness and lack of standing. Delaware Citizens for Clean Air, Inc. v. Stauffer Chemical Co., 367 F.Supp. 1040 (D.Del.1973). Plaintiff has now moved for an award of attorney's fees. Background facts may be found in this Court's earlier opinion.

Section 304 of the Clean Air Act, as pertinent here, provides:

> (d) The court, in issuing any final order . . . may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

42 U.S.C. § 1857h–2(d).

The question for decision then is whether this is such an "appropriate" case.

The rule that traditionally obtains in American courts is that litigants must bear the burden of their own attorney's fees regardless of the outcome of the case.[1] The courts have engrafted a number of exceptions upon this general rule, however. Thus (1) a prevailing party may recover his attorney's fees if his opponent has acted "in bad faith, vexaciously, wantonly, or for oppressive reasons;"[2] (2) a prevailing party may recover its attorney's fees when he has conferred a substantial benefit on an ascertainable class and the court's jurisdiction is such as to permit an order spreading plaintiff's costs among the benefited class;[3] and (3) a prevailing party may recover his attorney's fees from his opponent when his victory has vindicated a public policy which the legislative branch has determined to be "of the highest priority."[4] The award of attorney's fees to a prevailing party in these situations is an exercise of the general equity jurisdiction of the federal courts.

In addition to the inherent power of a court of equity to grant attorney's fees in these sorts of cases, Congress has, on a number of occasions, granted similar authority when creating new federal causes of action. In most of these instances, the statutory authority, like the court-fashion exceptions to the tradition-

---

[1]. *Cf.* Hall v. Cole, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973).

[2]. See *e. g.*, Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 n. 4, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) ; Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) ; Bell v. School Bd. of Powhatan County, 321 F.2d 494 (4th Cir. 1963).

[3]. See *e. g.*, Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

[4]. See Newman v. Piggie Park Enterprises, Inc., *supra* at 402, 88 S.Ct. 964; Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972) ; Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971).

al rule, has been limited to awards to a prevailing party.[5] Such a limitation is notably missing, however, from Section 304 of the Clean Air Act.

 The legislative history regarding Section 304 provides little guidance for determining when an award of counsel fees is "appropriate."[6] I think it is fair to conclude from the language chosen by Congress that ultimate success in a citizen's suit was not intended to be a prerequisite to an award. At the same time, however, in light of the absence of any more specific declaration of congressional intent, I believe that "appropriate" should be read in the context of the pre-existing notions about the circumstances under which one party may fairly be required to bear his adversary's costs of litigation. In this context it seems to this Court that success or failure must be given substantial weight and that an award of counsel fees to a losing party should be reserved for those cases in which either the litigation, though ultimately unsuccessful, serves the objectives of the Act in some substantial way or in which other exceptional circumstances tip the balance of the equities decidedly in the losing party's favor. The exercise of the equitable judgment thus called for must be made in light of all the actions of both parties during the course of litigation as well as during the relevant preceding period.

 I note at the outset that this is not a case where the litigant, although unsuccessful in court, has by the fact of the litigation itself forced or persuaded his adversary to act in some way which benefits the public. It can here be said with assurance that Stauffer acted no differently after the filing of this suit than it would have otherwise acted. Nor would it appear that this suit has in any other tangible or direct way contributed to achievement of the objectives of the Clean Air Act. Compare Sierra Club v. Lynn, 364 F.Supp. 834 (W.D. Tex.1973).

Accordingly, I turn to an analysis of the respective positions and actions of the parties relating to this case. Looking first to Stauffer's position, I note that it has not been demonstrated that the defendant acted in bad faith. The record indicates that Stauffer acted with due diligence to bring itself into compliance with the applicable emission standards by January 1, 1973 and that, when it appeared that it could not do so, it invoked appropriate procedures to obtain a variance. Its initial resort to the variance procedure was in June of 1971. There is nothing in the record to suggest that Stauffer delayed unnecessarily in seeking a variance. The variance sought was granted by the Air & Water Resources Commission of Delaware in October of 1972. Stauffer's variance request came before the Commission on an appeal from the decision of the Secretary of the Department of Natural Resources and Environmental Control. The Commission's decision to grant the variance contained the following findings and observations:

At the time of argument before the Commission the positions of the par-

---

5. See, e. g., Clayton Act, 15 U.S.C. § 15; Communications Act of 1934, 47 U.S.C. § 206; Consumer Products Safety Act, 15 U.S.C. § 2072(a); Emergency School Aid Act, 20 U.S.C. § 1617; Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1918. But see, Marine Protection, Research and Sanctuaries Act of 1972, 33 U.S.C. § 1415(d); Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1367(d).

6. The scanty legislative history bearing on this point indicates that the major congressional concern was with the possibility of frivolous or harassing suits brought under the citizen's supervision. During the congressional debate, Section 304 was held out by the bill's proponents as a device to permit awards of legal fees to defendants in such cases and thus to act as a disincentive to the bringing of a frivolous or harassing suit. See the remarks of Senator Muskie, 116 Cong.Rec. 33103 (Daily Ed. Sept. 22, 1970); remarks of Senator Hart, *Id.* at 33104.

ties had been modified to the point where the only apparent dispute between the parties was the length of time for which a variance should be granted. Appellant (Stauffer) desired a variance until January 1, 1974. Appellee's (the Secretary's) position was that appellant could and should be in compliance no later than July 1, 1973.

\* \* \* \* \* \*

The Commission concludes that Stauffer Chemical Company will be unable to construct and put into operation the necessary control device prior to January 1, 1973. The Commission further concludes that the request of a variance until January 1, 1974 is not unreasonable to complete the process of contracting, construction, testing, debugging and finally, the on-line operation of a process, which is now available to appellant. . . . The Commission further concludes that there appears to be no other process which could be reasonably expected to be installed, operating, etc. in a substantially shorter period of time.

Thus, so far as the record of this case shows, Stauffer acted reasonably in pursuing a difficult problem. The variance granted by the Commission was sent by the Governor of Delaware to the Administrator of the E.P.A. in early December of 1972. The Administrator approved the Delaware variance on May 26, 1973; this suit was filed on March 16, 1973.

Turning now to an examination of the plaintiff's position in this matter, I note initially that the balance of the equities clearly does not tip in plaintiff's favor as to those attorney's fees incurred following the Administrator's approval of defendant's variance on May 26, 1973. While I accept counsel's representation that he did not learn of that approval

for several months thereafter, it should have been apparent as of the beginning of June that no relief could be secured in this case. Counsel's failure to note the Administrator's approval will not justify saddling defendant with counsel fees thereafter incurred by the plaintiff. Plaintiff's claims for fees incurred prior to that point cannot, however, be so summarily dispatched.

Plaintiff cannot be faulted for bringing this lawsuit. In light of the Third Circuit precedents existing at the time of the filing of the complaint [7] it appeared that, since the Administrator had not yet acted to amend the Delaware Plan, the unamended plan stated the requirements of federal law and that, if Stauffer was violating that plan, it was in violation of the Act. Thus, when plaintiff decided to bring suit and engaged counsel for that purpose, it undoubtedly acted in good faith. While plaintiff did not pursue preliminary relief prior to the Administrator's approval of the variance, it may have decided to commence this litigation when it did in order to be in a position to move rapidly to judgment in the event the Administrator's decision rejected the variance or was unreasonably delayed. As earlier suggested, however, I do not believe good faith alone should require an award of attorney's fees to an unsuccessful litigant under Section 304. While I do not fault plaintiff for instituting this action when it did, I cannot say that this was the exceptional kind of case in which the public interest requires a successful defendant to pay the full costs of litigation.

Assuming *arguendo*, that Stauffer was in violation of federal law for the period from January 1, 1973 until the Administrator approved the state granted variance on May 26, 1973, this Court is unable to conclude that plaintiff was in the position of one whom Congress

7. See Getty Oil v. Ruckleshaus, 342 F.Supp. 1006 (D.Del.1972) aff'd. 467 F.2d 349 (3rd Cir. 1972).

sought to encourage to bring suit. The existence of the state granted variance and its pendency before the Administrator makes this a very different case than one in which a recalcitrant pollutor is left free to ignore Clean Air Act standards simply because neither the state nor the federal enforcement agencies possess the resources necessary to force his compliance. The fair inference from the facts of this case is that both the state and federal enforcement authorities opted not to seek judicial enforcement of the 2,000 ppm emission standard until the Administrator had time to consider the merits of the state granted variance.

Suits under the citizen's suit provision of the Act possess the potential for greatly aiding in the effective enforcement of mandated emission standards. They can provide an important supplement to the enforcing powers of state and federal agencies. That they should thus be encouraged by the award of attorney's fees when they do so supplement official enforcement is consistent with the legislative intent to restore the purity of our air in a planned gradual way through a bi-level scheme of government regulation. It is doubtful, however, that it is "appropriate" to provide added incentive for the institution of such suits when the Administrator is actively engaged in deciding whether a state initiated revision in its plan ought to be approved. The Act requires state and federal agencies to make judgments about what emission levels can reasonably be sought to be attained and when. The revision procedure reflects the practical necessity that, to be effective, this process may require some trial and error. Here the state determined that its original goal could not, for technological reasons, be met; it granted a variance. The Administrator at the time of the filing of this suit was actively considering this proposed revision in the state plan. Sound administration of the statute in such a case may counsel restraint by a court of equity. *Cf.* Duquesne Power & Light Co. v. EPA, 481 F.2d 1 (3rd Cir. 1973). I need not decide, however, whether injunctive enforcement of an existing standard could be appropriate during the Administrator's review of a state granted variance. The point here is a narrower one: a private suit in such circumstances is not the sort of private suit Congress sought to encourage in order to aid the limited enforcement powers of state and federal regulatory agencies, and absent a compelling equity in favor of plaintiff, is not an appropriate case for an award of attorney's fees. I find no such equity in this case.

The plaintiff proceeded here in good faith; its motives were admirable ones. However, the duty of this Court to do equity requires me to look at the conduct of both parties. Having done this, I am unable to say that this case is an appropriate one in which to require the defendant alone to bear the burden of the costs of this litigation. Plaintiff's motion will be denied.