CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Plaintiff,

v.

REALTY INVESTMENTS ASSOCIATES, L.P.; Robert V. Tishman; Jerry I. Speyer, d/b/a Tishman Speyer 42nd Street Associates; Larry I. Silverstein and Bernard H. Mendik, all doing business as Tishman Speyer Silverstein Partnership, Defendants.

No. 79 Civ. 618 (WCC).

United States District Court, S. D. New York.

July 14, 1981.

Ernest J. Williams, New York City, for plaintiff; Barry S. Goldstein, New York City, of counsel.

Rosenman, Colin, Freund, Lewis & Cohen, New York City, for defendants; Gerald A. Rosenberg, Jay A. Segal, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Plaintiff Consolidated Edison Company of New York, Inc. ("Con Ed") brought this suit against Tishman-Speyer-Silverstein, Partnership, and the partners therein (collectively "TSS"), under Section 304 of the Clean Air Act, 42 U.S.C. § 7604. Following dismissal of the action on consent of the parties, TSS has moved for an award of its attorneys' fees, pursuant to 42 U.S.C. § 7604(d). That section, in relevant part, provides that the Court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."

*Background*

On January 1, 1978, TSS acquired title to the land and building located at Eleven West 42nd Street in Manhattan ("Eleven West"). For many years Con Ed had been the sole supplier of electric power and steam heat to Eleven West. However, on November 10, 1979, TSS began to produce electric power for Eleven West tenants from diesel generators and related equipment purchased and installed by TSS in the Eleven West basement, a system hereafter referred to as cogeneration.

It is not disputed that Con Ed has utilized its considerable muscle in opposing the use of cogeneration, both generally and at Eleven West, on several fronts. One aspect of Con Ed's efforts was the commencement of this action in February 1979, seeking to enjoin TSS from continuing the construction of its cogeneration equipment because of TSS's alleged failure to apply for a preconstruction permit from the United States Environmental Protection Agency ("EPA"). Con Ed contended that TSS was required to obtain such a permit because the Eleven West cogeneration equipment had the potential to emit more than 250 tons annually of nitrogen oxide pollutants ("NOx"). See 40 C.F.R. § 52.21.

In fact, on January 10, 1979, and again on January 23, 1979, TSS received letters from an EPA employee advising TSS that no such permit was required because potential annual emissions from Eleven West were less than 250 tons of each pollutant regulated under the Clean Air Act. That conclusion was premised upon the enforceability of a New York City permit, obtained by TSS in October 1978, which limited the amount of fuel to be utilized by the Eleven West cogeneration equipment.

On March 13, 1979, TSS moved for summary judgment, contending that they had in fact been exempted from the permit requirement by the January 10 and 23 letters. Con Ed responded by arguing (1) that the January letters did not constitute an authorized EPA exemption from the permit requirement, and (2) that the Eleven West cogeneration equipment did have the potential to emit in excess of 250 tons per year of NOx.

On September 24, 1979, the Court invited the EPA to express its views on the action. On May 13, 1980, the EPA issued a "preliminary determination," concluding (1) that the January letters did not constitute "final action" within the meaning of Section 307(b)(1) of the Clean Air Act because the author of the January 10 letter did not have authority to bind the agency, (2) that the limitations on fuel consumption contained in the City permit are not enforceable by the EPA, and consequently are not to be considered in determining the potential emissions at Eleven West, (3) that it appeared that Eleven West's potential emissions of NOx far exceeded the 250 annual tons threshold, and (4) that a final determination of the potential emissions would be issued after the parties had had the opportunity to submit relevant data to the EPA.

On May 16, 1980, a pretrial conference was held before the Court, attended by Con Ed, TSS and the EPA. The subject of estoppel against the EPA because of TSS's reliance upon the January 1979 letters was discussed, but no ruling was made. The EPA took the position that it had primary jurisdiction over the dispute, and the possibility of placing the matter on the Suspense Calendar pending a final determination by the EPA was also discussed. That day the EPA and TSS also discussed the possibility that TSS might be exempt from the permit requirement on the alternative ground of qualifying under the "grandfather clause," 40 C.F.R. § 52.21(i)(3), which provides:

"The requirements of paragraphs (j) through (r) of this section shall not apply to a major stationary source or major modification that was not subject to 40 C.F.R. 52.21 as in effect before March 1, 1978, if the owner or operator—

"(i) Obtained all final Federal, State and local preconstruction permits necessary under the applicable State implementation plan before March 1, 1978;

"(ii) Commenced construction before March 19, 1979; and

"(iii) Did not discontinue construction for a period of 18 months or more and completed construction within a reasonable time."

Apparently Con Ed was not privy to these discussions.

On August 25, 1980, the EPA issued a second preliminary determination, which concluded that, while Eleven West's potential emissions of NOx were substantially in excess of 250 tons per year, Eleven West was exempt from the permit requirement under the grandfather clause. This action was then placed in suspense pending the EPA's final determination. A final determination by the EPA, dated December 17, 1980, adhered to the conclusions set forth in the August 25 preliminary determination. The final determination of the EPA was published in the Federal Register on January 8, 1981. Con Ed had the option of appealing the EPA decision within 60 days of January 8, 1981, but instead consented to the dismissal of this action by Order dated January 23, 1981.

*Discussion*

While 42 U.S.C. § 7604(d) does not make any distinction between the award of attorneys' fees to plaintiffs and to defendants, it is manifest that defendants face a substantially more difficult course in obtaining their counsel fees than do similarly situated plaintiffs. Since Section 7604(d) evidences a Congressional determination that private suits are to be a significant aspect of assuring compliance with the Clean Air Act, the courts have shown no reluctance to award attorneys' fees to deserving plaintiffs. See, *e. g.*, *Natural Resources Defense Council, Inc. v. Environmental Protection Agency*, 484 F.2d 1331 (1st Cir. 1973). *Cf. Friends of the Earth v. Carey*, 535 F.2d 165 (2d Cir. 1976) (subse-

quent history omitted). Section 7604(d) thus constitutes a purposeful departure from the common law rule requiring each party to bear its own counsel fees. See *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Congress' design of encouraging citizen suits would be substantially frustrated were Section 7604(d) read to permit prevailing defendants to recover attorneys' fees with the same relative ease that successful plaintiffs enjoy. In fact, the legislative history, the relevant portions of which are reprinted in the appendix to *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692, 728–29 (D.C.Cir.1975), makes clear that prevailing defendants may recover fees under Section 7604(d) only where the action may be fairly characterized as frivolous or harassing. See *Delaware Citizens for Clean Air, Inc. v. Stauffer Chemical Co.*, 62 F.R.D. 353, 355 n.6 (D.Del.1974), *aff'd*, 510 F.2d 969 (3d Cir. 1975).

■ Of course, while a defendant seeking attorneys' fees under Section 7604(d) may succeed only where the action was objectively frivolous, there is no requirement that the Court find that the action was brought in subjective bad faith. The latter, more difficult, standard would render Section 7604(d) meaningless, adding nothing to the common law rule authorizing an assessment of attorneys' fees against a party that has proceeded in bad faith. See *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 419, 98 S.Ct. 694, 699, 54 L.Ed.2d 648 (1978).

■ For the reasons which follow, the Court is of the opinion that Con Ed's suit against TSS, although ultimately unsuccessful, was not frivolous, and accordingly TSS's motion for recovery of its attorneys' fees is denied.

TSS's argument that this action was frivolous is premised upon its three contentions that this suit was (1) part of a larger Con Ed campaign designed to stifle cogeneration, (2) brought without a proper foundation, and (3) unreasonably maintained for almost two years after Con Ed learned Eleven West was exempt from the EPA permit requirement. None of these contentions is persuasive, the first of them being largely irrelevant and the latter two incorrect. Each of them will be addressed in turn.

### 1. Con Ed Opposition to Cogeneration

Obviously Con Ed has a commercial incentive to oppose cogeneration since cogeneration translates into loss of Con Ed revenue. TSS points to this fact, as well as Con Ed's undeniably major effort to prevent cogeneration, in arguing that this suit stems only from Con Ed's concern for its customer base, and not at all from any environmental concern or desire to further the objectives of the Clean Air Act. Con Ed argues that it is the undesirable environmental consequences of cogeneration, in particular, the possible curtailment of Con Ed's ability to utilize high-emission domestic coal as a fuel source if cogeneration emissions have already significantly added to air pollution, which prompted both this lawsuit and Con Ed's opposition to cogeneration generally.

The dispute is academic as it impacts upon TSS's motion. From the discussion above, it is evident that if Con Ed's positions on the issues in this lawsuit were objectively frivolous, the purest of motives cannot save Con Ed from footing the bill for TSS's counsel. Equally compelling, however, is the conclusion that a commercial motive should not impel the Court to award attorneys' fees to TSS if Con Ed's positions on the issues in this litigation were not objectively frivolous. A private suit under the Clean Air Act is no less an effective enforcement of the statute when brought by one whose sole motivation is economic. And those whose goal is economic self-gain, as compared with those who operate solely out of concern for the environment, certainly have no monopoly on the capacity to prosecute frivolous lawsuits.

In short, the instant motion must turn on the objective reasonableness of Con Ed's position throughout the lawsuit, and the Court need not, and does not, express any

opinion as to Con Ed's purpose in commencing this action.

## 2. Foundation for Suit

TSS's motion papers initially allege, upon information and belief, that, prior to commencing the lawsuit, Con Ed made no inquiry of the EPA regarding any EPA determination concerning Eleven West. By affidavit, Con Ed responds that it did inquire of the EPA as to the issuance of any permit for Eleven West and received a negative answer, and that Con Ed daily monitored the Federal Register, where exemptions are allegedly regularly published, but discovered no exemption for Eleven West. TSS replies by supplying an EPA memorandum indicating that it was only at a later date that the EPA determined to *routinely* publish *all* exemptions in the Federal Register. TSS also suggests that Con Ed could have and should have inquired directly of the EPA and of TSS, and by doing so would have been informed of the existence of the January 1979 letters to TSS, which TSS regarded as an exemption.

Under these circumstances, I cannot agree that the action was commenced without a reasonable foundation. While the record indicates that, at the time Con Ed was monitoring the Federal Register, the EPA had not committed to publishing every exemption therein, TSS has not provided any basis for disputing Con Ed's position that exemptions were published with sufficient regularity as to make Con Ed's reliance thereon reasonable.

Moreover, the first thing TSS did in this litigation was to make the Court and Con Ed aware of the January 10, 1979 letter from the EPA, whereupon Con Ed immediately took the position that the letter did not constitute an official EPA exemption.

Thus it would appear that even if Con Ed had become aware of the January 1979 letters prior to instituting suit, the action would have gone forward, just as it did, based upon Con Ed's challenges to the sufficiency of the January 1979 letters. Accordingly a determination of whether or not Con Ed's lawsuit was frivolous must turn on the reasonableness of Con Ed's posture after learning of the January 1979 letters, a question to which the Court now turns.[1]

## 3. Maintenance of Suit

The Court's conclusion that Con Ed's maintenance of the action for almost two years after being made aware of the January 1979 letters was not frivolous is based upon the following three considerations.

First, while the Court expresses no opinion as to the legal effect of the January 10, 1979 letter, the fact that, on May 13, 1980, the EPA took the position that the letter was unauthorized and not binding upon the EPA provides ample support for the conclusion that Con Ed's identical position regarding the letter was not frivolous.

Second, Con Ed's position that Eleven West's potential emissions of NOx exceeded 250 annual tons was not frivolous. Even assuming the applicability of the fuel consumption limitations contained in the City permit, Con Ed's contention that, under those limitations, Eleven West had the potential to emit 257 annual tons of NOx was not frivolous.

The task here is not to resolve the conflict between the experts for the parties, but rather to determine whether or not Con Ed's calculations were without a reasonable basis. TSS contends that the 257 annual tons estimate by Con Ed was unreasonable

1. There is a certain ironic parallel between the actions of Con Ed in instituting this action and those of TSS in pursuing this motion on this point. Con Ed initially alleged that TSS had not acquired an exemption. TSS responded by pointing to the January 1979 letters, documents Con Ed presumably could have discovered by inquiring of TSS. Con Ed then retreated to the position that the January 1979 letters were insufficient to meet the exemption requirement. By comparison, TSS initially took the position that Con Ed had made no pre-litigation investigation regarding TSS's permit or exemption. Con Ed responded by detailing its prior inquiries, matters TSS presumably could have discovered by asking Con Ed. TSS then retreated to the position that Con Ed's inquiries were insufficient.

because it (1) ignored published EPA emission factors, and (2) admittedly had a 20% margin of error.

As to the failure to use the published EPA emission factors, Con Ed instead used the emission factors provided by TSS in its application for the City permit. During the litigation, Con Ed contended that the EPA was not bound to apply the published emission factors and should use the purportedly more reliable factors supplied by TSS. TSS contended that the published emission factors were applicable and binding upon the EPA. This precise issue does not appear to have been previously adjudicated, and, while Con Ed's position may eventually be judged to be incorrect, I cannot agree that it is without any reasonable basis or potential merit. As to the 20% margin of error, since Con Ed's calculation of 257 annual tons of NOx could have been understated as well as overstated by 20%, Con Ed's position that Eleven West should be found to have the potential to emit in excess of 250 tons of NOx per year was not without a reasonable basis.

Moreover, once the EPA indicated that the City permit and the fuel consumption limitation contained therein were inapplicable to Eleven West, it became indisputable that potential annual emissions of NOx were in fact well above 250 tons. At that point, the reasonableness of Con Ed's continued maintenance of this action turns upon consideration of the grandfather clause exemption, to which the Court now turns.

Third, as to the applicability of the grandfather clause, 40 C.F.R. § 52.21(i)(3), Con Ed's posture was not unreasonable. Qualification under the grandfather clause requires (1) the acquisition of all necessary permits by March 1, 1978, (2) the commencement of construction by March 19, 1979, and (3) continued construction for at least eighteen months and completion within a reasonable time. Since TSS had acquired a City permit for Eleven West in October 1978, it reasonably appeared that the first requirement was not met. It was not until the EPA's May 13, 1980 preliminary determination indicated that no City permit was required that the grandfather clause became a reasonable consideration. At that point, qualification under the grandfather clause turned upon the second and third requirements, factual matters as to which Con Ed denies having had knowledge and as to which the EPA requested TSS to submit relevant information. As soon as the EPA factually determined that Eleven West qualified under the grandfather clause exemption, Con Ed consented to the dismissal of this action. Under these circumstances, I do not find Con Ed's behavior to have been unreasonable, frivolous or harassing.

*Conclusion*

The motion of TSS for recovery of its attorneys' fees is denied.

SO ORDERED.