# IN THE SUPREME COURT OF CALIFORNIA

ARNETTE TRAVIS et al.,
Plaintiffs and Appellants,

v.

BILL BRAND et al.,
Defendants and Respondents;
REDONDO BEACH WATERFRONT, LLC, et al.,
Appellants.

ARNETTE TRAVIS et al.,
Plaintiffs and Appellants,

v.

BILL BRAND et al.,
Defendants and Respondents.

S268480

Second Appellate District, Division Eight
B298104, B301479

Los Angeles County Superior Court
BC665330

January 30, 2023

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Cantil-Sakauye[*] concurred.

---

[*] Retired Chief Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

TRAVIS v. BRAND

S268480

Opinion of the Court by Guerrero, C. J.

Several defendants were sued for their alleged failure to make certain required disclosures under the Political Reform Act of 1974 (Gov. Code, § 81000 et seq.).[1] After prevailing in the lawsuit, defendants successfully sought attorney's fees under section 91003, subdivision (a) (section 91003(a)), which grants trial courts discretion to award attorney's fees "to a plaintiff or defendant who prevails."[2] The question we address here is whether a trial court's discretion to award fees to a prevailing defendant is coextensive with its discretion to award fees to a prevailing plaintiff. The text of the statute does not specify the standard that should govern an award of fees to either prevailing party. Nonetheless, in order to effectuate the purpose of encouraging private litigation enforcing the Political Reform Act, we interpret section 91003(a) to impose an asymmetrical standard, which constrains the trial court's discretion to award attorney's fees to a prevailing defendant. Consistent with the

---

[1]   All further statutory references are to the Government Code unless otherwise specified.

[2]   The statute applies to actions "for injunctive relief to enjoin violations or compel compliance with" the act. (§ 91003(a).) Section 91012, also part of the Political Reform Act and discussed later in this opinion, contains similar language to section 91003(a) as it relates to awardable attorney's fees (see fn. 5, *post*) if the plaintiff or defendant "prevails in any action authorized by this title."

standard adopted in similar contexts, including the enforcement of civil rights and fair housing and employment laws, a prevailing defendant under the Political Reform Act "should not be awarded fees and costs unless the court finds the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." (*Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115 (*Williams*).) Because the Court of Appeal affirmed an award of attorney's fees under section 91003(a) in this case without first considering whether this standard had been met, we reverse the judgment and remand for further proceedings.

## I.

In 2010, residents of the City of Redondo Beach (City) approved Measure G, which authorized 400,000 square feet of new development in the City's King Harbor-Pier area. The City sought out a private developer to assist with the project and ultimately entered into an exclusive negotiating agreement with CenterCal Properties, LLC. (*Redondo Beach Waterfront, LLC v. City of Redondo Beach* (2020) 51 Cal.App.5th 982, 988 (*Redondo Beach Waterfront*).) In 2016, the project passed several milestones: the City notified CenterCal Properties that its application seeking approval of the vesting tentative tract map was " 'deemed complete' "; the harbor commission certified the environmental impact report and approved both a coastal development permit and a conditional use permit; and the city council passed a resolution reciting its approval " 'shall confer a vested right to proceed with development.' " (*Id.* at pp. 988–989.) The City and CenterCal Properties signed an agreement for lease of property and infrastructure financing the following year. (*Id.* at p. 989.)

Meanwhile, some City residents who opposed the development started soliciting signatures to place a local initiative — the King Harbor Coastal Access, Revitalization, and Enhancement Act (later designated Measure C) — on the ballot for the next general municipal election. Measure C sought to place zoning restrictions on the highly contested $400 million waterfront project. Measure C appeared on the March 7, 2017, ballot, and was approved by the voters. (*Redondo Beach Waterfront, supra*, 51 Cal.App.5th at p. 990.)

These events triggered various lawsuits, but we are concerned here only with one: an action seeking injunctive relief against certain Measure C supporters to compel their compliance with the Political Reform Act. The lawsuit was filed by two City residents who opposed Measure C and supported the development project, Arnette Travis and Chris Voisey (collectively, plaintiffs). Plaintiffs alleged that some supporters of Measure C had violated and continued to violate the Political Reform Act by failing to disclose the actual identity of entities who were supporting the ballot measure. These supporters included Rescue Our Waterfront, a political action committee (PAC), and Wayne Craig, a principal officer of the committee; Redondo Beach Mayor Bill Brand and City Councilmember Nils Nehrenheim; and Brand's mayoral campaign committee as well as its treasurer, Linda Moffat (collectively, defendants). According to the complaint, the Rescue Our Waterfront PAC was a committee " 'primarily formed' " to support Measure C and was therefore required to disclose this information to the public. (*Travis v. Brand* (2021) 62 Cal.App.5th 240, 246 (*Travis*); see Gov. Code, § 84107; Cal. Code Regs., tit. 2,

§ 18247.5.)[3] The complaint further alleged that the Rescue Our Waterfront PAC was controlled by candidates Brand and Nehrenheim, which likewise should have been disclosed to the public. (*Travis*, at p. 247; see Cal. Code Regs., tit. 2, § 18521.5.) Failure to disclose this information, plaintiffs argued, had the effect of deceiving voters. (*Travis*, at p. 247.)

Following a five-day bench trial, the trial court ruled in defendants' favor on all claims. It determined that the Rescue Our Waterfront PAC was a general purpose committee (§ 82027.5) — and therefore *not* primarily formed to support Measure C — and that neither Brand nor Nehrenheim exerted significant control or influence over it. (*Travis*, *supra*, 62 Cal.App.5th at pp. 248, 252–253.) The court awarded defendants costs and attorney's fees as prevailing parties under section 91003(a) in the amount of $896,896.60. (*Travis*, at p. 253.) In addition to declaring that defendants were the prevailing parties in the action, the trial court found plaintiffs' lawsuit "was frivolous, unreasonable and groundless." The trial court reasoned that plaintiffs "prosecuted their private enforcement action in order to punish the [d]efendants for their

---

[3] As summarized by the Court of Appeal: "General purpose committees support or oppose more than one candidate or ballot measure. (Gov. Code, § 82027.5.) Primarily formed committees support or oppose a single candidate, single measure, multiple candidates in a single election, or multiple measures in a single election. (*Id*., § 82047.5.) A committee can be either general purpose or primarily formed. Either type of committee may also be candidate-controlled, which means a candidate has significant influence over the committee. (*Id*., § 82016.)" (*Travis*, *supra*, 62 Cal.App.5th at p. 246.) "Committees primarily formed to support or oppose a measure must say so in their name, for example, 'No on Measure A.'" (*Id*. at pp. 246–247.)

free speech and their public support to guard against the [development] project."

As relevant here, the Court of Appeal affirmed the trial court's award of attorney's fees to defendants. (*Travis, supra,* 62 Cal.App.5th at p. 265.) The court held that section 91003(a) grants trial courts discretion to award attorney's fees and costs " 'to a *plaintiff or defendant who prevails,*' " such that both "prevailing plaintiffs and prevailing defendants are to be treated alike" in determining their entitlement to a fee award. (*Id.* at pp. 263, 264.) Because defendants were "unquestionably" the prevailing parties in this litigation, the Court of Appeal concluded that the trial court acted within its discretion to award them attorney's fees (*id.* at p. 264), irrespective of any finding that the lawsuit was frivolous.

In construing the attorney's fees statute to define a single standard that applies equally to both prevailing plaintiffs *and* defendants, the Court of Appeal rejected two decisions — *People v. Roger Hedgecock for Mayor Com.* (1986) 183 Cal.App.3d 810 (*Hedgecock*) and *Community Cause v. Boatwright* (1987) 195 Cal.App.3d 562 (*Boatwright*) — which held that a prevailing defendant seeking attorney's fees under the Political Reform Act had to establish that the plaintiff's claims were frivolous, unreasonable, or without foundation. (*Hedgecock,* at p. 815; *Boatwright,* at p. 574.)[4]

---

[4] Those decisions in turn were based on the reasoning of *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412 (*Christiansburg*), which involved attorney's fee awards under title VII of the Civil Rights Act of 1964 (Pub.L. No. 88-352 (July 2, 1964) 78 Stat. 241). We discuss these decisions further, *post.*

We granted review to resolve the conflict and to determine whether an asymmetrical standard applies to a prevailing defendant's request for attorney's fees under the Political Reform Act.

**II.**

California follows the American rule regarding attorney's fees. Under that rule, litigants are ordinarily responsible for paying their own attorney's fees, unless a statute or agreement provides otherwise. (*Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1257; Code Civ. Proc., § 1021.) The statutory exception at issue in this case is set forth in Government Code section 91003(a). It currently states, in pertinent part: "Any person residing in the jurisdiction may sue for injunctive relief to enjoin violations or to compel compliance with the provisions of this title. . . . The court may award to a plaintiff or defendant who prevails that party's costs of litigation, including reasonable attorney's fees." (*Ibid.*)

The parties agree that this statute gives the trial court discretion to decide whether to award attorney's fees in cases arising under the Political Reform Act. They disagree, however, about the legal framework governing that discretion. Defendants, echoing the Court of Appeal, argue that prevailing plaintiffs and defendants "are to be treated the same" in determining whether to award attorney's fees. Plaintiffs, on the other hand, contend that a defendant's opportunity to recover attorney's fees is more limited than that of a plaintiff: a prevailing defendant may recover attorney's fees only when the plaintiff's suit was " 'frivolous, unreasonable or without foundation.' " A contrary rule, in plaintiffs' view, would chill

private enforcement of the Political Reform Act and thus undermine its purpose. We agree with plaintiffs.

## A.

The United States Supreme Court construed a similarly worded fee statute as imposing an asymmetrical standard in *Christiansburg, supra,* 434 U.S. 412, which affirmed the denial of attorney's fees to a prevailing defendant in an action under title VII of the Civil Rights Act of 1964. The fee statute there — like the one here — was silent on what standard to apply when awarding attorney's fees. The statute there provided, " 'In any action or proceeding under this title the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee.' " (*Christiansburg,* at pp. 413–414, quoting 42 U.S.C. § 2000e-5(k).) In analyzing what standard should govern a fee award to a successful defendant, *Christiansburg* emphasized that a private plaintiff in a title VII action "is the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.' " (*Christiansburg,* at p. 418.) *Christiansburg* also recognized that when a court awards fees to a prevailing plaintiff, the fee is assessed "against a violator of federal law." (*Ibid.*) These two "strong equitable considerations counseling an attorney's fee award to a prevailing Title VII plaintiff . . . are wholly absent in the case of a prevailing Title VII defendant." (*Ibid.*) Indeed, to assess fees against plaintiffs "simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII. Hence, a plaintiff should not be assessed [an] opponent's attorney's fees unless a court finds that [the] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it

clearly became so." (*Id*. at p. 422.) The Supreme Court cautioned courts considering these fee requests to "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." (*Id*. at pp. 421–422, italics omitted.)

## B.

Two Court of Appeal decisions subsequently applied the *Christiansburg* standard to requests for attorney's fees under the Political Reform Act. Before discussing these opinions, we provide a brief overview of the Political Reform Act.

"The State of California has determined that the [Political Reform Act] is vitally important to its republican form of government." (*Agua Caliente Band of Cahuilla Indians v. Superior Court* (2006) 40 Cal.4th 239, 260; see *Thirteen Committee v. Weinreb* (1985) 168 Cal.App.3d 528, 532 (*Weinreb*) ["The manifest purpose of the financial disclosure provisions of the [Political Reform] Act is to insure a better informed electorate and to prevent corruption of the political process"].) In enacting the Political Reform Act by initiative, the voters declared that "[p]revious laws regulating political practices have suffered from inadequate enforcement by state and local authorities." (§ 81001, subd. (h).) The Political Reform Act expressly states that its provisions are to be "liberally construed to accomplish its purposes." (§ 81003.) One of its objectives is that "[a]dequate enforcement mechanisms should be provided to public officials and private citizens in order that this title will be vigorously enforced." (§ 81002, subd. (f).) One method of enforcement is through private actions for injunctive relief. (§ 91003(a).)

Both *Hedgecock* and *Boatwright* considered the purposes and objectives of the Political Reform Act when determining what standard to apply to attorney's fee requests under the statute. In *Hedgecock*, the district attorney filed a civil lawsuit for injunctive relief based on various defendants' alleged failures to report campaign contributions made to a mayoral candidate. (*Hedgecock*, *supra*, 183 Cal.App.3d at pp. 812–813.) The district attorney later voluntarily dismissed the civil lawsuit, after deciding to pursue a criminal action and allowing the Fair Political Practices Commission to file its own civil action against many of the same defendants. (*Id.* at pp. 813–815.) Contending they were the prevailing party, defendants then sought attorney's fees from the trial court. (*Id.* at p. 814.) The trial court agreed with the district attorney that defendants were not the prevailing party following the voluntary dismissal, and denied fees solely on that basis. (*Ibid.*) The Court of Appeal did not address this ground for denying fees; instead, the court denied fees on the ground that "the district attorney's suit was not frivolous or groundless" within the meaning of the *Christiansburg* standard. (*Id.* at p. 815.)

The *Hedgecock* court justified its reliance on the *Christiansburg* standard by focusing on the statutory purpose of encouraging private enforcement of the Political Reform Act. (*Hedgecock, supra*, 183 Cal.App.3d at pp. 815–819.) The "primary purpose of the prevailing party attorneys' fee provisions of the Political Reform Act is to encourage private litigation enforcing the act." (*Id.* at p. 816.) But a rule allowing the routine award of attorney's fees to prevailing defendants in Political Reform Act lawsuits, like a rule allowing the routine award of fees to prevailing defendants in the civil rights actions at issue in *Christiansburg*, " 'could discourage all but the most

airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.' " (*Hedgecock*, at p. 817.) The *Hedgecock* court found the *Christiansburg* analysis persuasive, stating: " 'No matter how . . . meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.' " (*Id.* at p. 817.)

The *Hedgecock* court further held that the need to incentivize private enforcement is particularly acute for actions brought under the Political Reform Act. "Where the actionable wrong is the adulteration of the political process," the *Hedgecock* court observed, "the damage to the citizenry is significant but the injury to any one citizen is not only nebulous but also indirect." (*Hedgecock*, *supra*, 183 Cal.App.3d at p. 817.) "The attorney's fee provisions of the Political Reform Act are designed to ameliorate the burden on the individual citizen who seeks to remedy what is essentially a collective wrong." (*Ibid.*; cf. *Eddy v. Colonial Life Ins. Co. of America* (D.C. Cir. 1995) 59 F.3d 201, 205 ["the presumption favoring fee-shifting in civil rights cases reflects the unique importance of the enforcement of these statutes to the nation as a whole, as well as to their direct beneficiaries"].)[5]

---

[5] The *Hedgecock* court was interpreting section 91003(a) as well as section 91012, a separate but similarly worded provision of the Political Reform Act. (*Hedgecock*, *supra*, 183 Cal.App.3d at p. 815.) Section 91012 currently provides in relevant part:

The *Boatwright* court reached the same result in an action brought by a nonprofit corporation against a state assemblyman for alleged reporting violations under the Political Reform Act. (*Boatwright, supra*, 195 Cal.App.3d at pp. 565–566.) The Court of Appeal affirmed the judgment in favor of the defendant, but reversed the order requiring the plaintiff to pay the defendant's attorney's fees and costs. (*Id.* at p. 566.) The plaintiff argued on appeal that a prevailing defendant should be awarded fees "only if the plaintiff's claim is frivolous, unreasonable, malicious, or clearly groundless." (*Id.* at p. 574.) The court acknowledged that section 91012 "[o]n its face . . . contains no such limitation," but it concluded that *Hedgecock* and *Christiansburg* supported the plaintiff's interpretation of the statute. (*Boatwright*, at pp. 574–575.) The court noted that "[t]he statute at issue in *Christiansburg* was similar to [the Political Reform Act] in that it contained no limitation on a prevailing defendant's right to fees," but the United States Supreme Court nonetheless "rejected an argument that the plain meaning of the statute entitled a prevailing defendant to fees on the same basis as a prevailing plaintiff." (*Id.* at p. 575.) It was persuaded by *Christiansburg*'s conclusion that an asymmetrical fee standard was necessary to encourage private enforcement actions, and by *Hedgecock*'s application of this standard to the Political Reform Act, where encouraging such claims was " 'perhaps even more critical' " to " 'remedy what is essentially a collective wrong.' " (*Boatwright*, at p. 575, quoting *Hedgecock, supra*, 183 Cal.App.3d at p. 817.)

---

"The court may award to a plaintiff or defendant other than an agency, who prevails in any action authorized by this title, that party's costs of litigation, including reasonable attorney's fees."

## C.

The Court of Appeal below expressly disagreed with *Hedgecock* and *Boatwright*. (See *Travis*, *supra*, 62 Cal.App.5th at p. 264.) It believed the high court had "considerably limited" the scope of the *Christiansburg* standard in *Fogerty v. Fantasy, Inc.* (1994) 510 U.S. 517 (*Fogerty*). (*Travis*, at p. 264.) Based on its view that the fee provision here resembled the one in *Fogerty* more than the one in *Christiansburg*, the Court of Appeal concluded "prevailing plaintiffs and prevailing defendants are to be treated alike" under the Political Reform Act. (*Travis*, at p. 264.) We conclude the Court of Appeal's reliance on *Fogerty* was misplaced.

*Fogerty* involved a prevailing defendant in the distinct context of a private copyright dispute. The fee statute at issue in *Fogerty* resembled the one here, insofar as it did not expressly articulate any particular standard to inform a court's discretion in awarding attorney's fees to a prevailing party, as well as the fee statute at issue in *Christiansburg*. (See *Fogerty*, *supra*, 510 U.S. at p. 519, quoting the Copyright Act of 1976, 17 U.S.C. § 505 ["in any copyright infringement action 'the court may . . . award a reasonable attorney's fee to the prevailing party'"].) To determine what standard should apply, the high court again examined "[t]he goals and objectives" of the governing statutory scheme. (*Fogerty*, at p. 524.) It concluded that the goals and objectives of the Copyright Act differed from those underlying the Civil Rights Act of 1964 and thus warranted applying a different standard for awarding attorney's fees to prevailing defendants. (*Fogerty*, at pp. 524–527.)

First, "in the civil rights context, impecunious 'private attorney general' plaintiffs can ill afford to litigate their claims

12

against defendants with more resources," so Congress sought "to provide incentives for the bringing of meritorious lawsuits[] by treating successful plaintiffs more favorably than successful defendants in terms of the award of attorney's fees." (*Fogerty*, *supra*, 510 U.S. at p. 524.) Litigants in copyright actions, on the other hand, " 'can run the gamut from corporate behemoths to starving artists.' " (*Ibid.*) And "it is by no means always the case that the plaintiff in an infringement action is the only holder of a copyright; often times, defendants hold copyrights too." (*Id.* at p. 526.)

Second, "the policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement." (*Fogerty*, *supra*, 510 U.S. at p. 526.) The primary purpose of copyright, after all, is not to incentivize the greatest number of copyright infringement suits, but to offer a limited exclusive right to the copyright holder so as " ' "to promote the Progress of Science and useful Arts." ' " (*Id.* at p. 527, quoting U.S. Const., art. I, § 8, cl. 8.) While copyright law grants the holder of a copyright " 'the right to their original expression,' " it also " 'encourages others to build freely upon the ideas and information conveyed by a work.' " (*Fogerty*, at p. 527.) To achieve *both* of these goals, "it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. . . . [A] successful defense of a copyright infringement action may further the policies of the Copyright Act *every bit as much* as a successful prosecution of an infringement claim by the holder of a copyright." (*Ibid.*, italics added.) Accordingly, "defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." (*Ibid.*)

We disagree with the Court of Appeal's conclusion that this case is unlike *Christiansburg* and more like *Fogerty*. (*Travis, supra*, 62 Cal.App.5th at p. 264.) To determine whether "election law disputes are more like the ordinary civil litigation setting in *Fogerty*" (*id.* at p. 264), we must examine the goals and objectives of the Political Reform Act. (Accord, *Martin v. Franklin Capital Corp.* (2005) 546 U.S. 132, 139–140 ["When applying fee-shifting statutes, 'we have found limits in "the large objectives" of the relevant Act, which embrace certain "equitable considerations" ' "].)

As discussed above, the voters intended for the Political Reform Act to be robustly enforced to promote the important public policy of transparency. (See *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 642 ["the Political Reform Act expressly encourages enforcement by private citizen suits"]; *Weinreb, supra*, 168 Cal.App.3d at p. 538 [the act is "dependent upon private litigation as a means of enforcement"].) As the ballot pamphlet explained about the Political Reform Act, "Proposition 9 will establish standards which give citizens a basis for the faith and trust which must lie at the heart of our political process," undergirded "at last" by "full, fair and independent enforcement of the law." (Ballot Pamp., Primary Elec. (June 4, 1974) rebuttal to argument against Prop. 9, p. 37.)

The policies and objectives of the Political Reform Act are not analogous to the Copyright Act in the context of attorney's fee awards. The Copyright Act "serves the purpose of enriching the general public through access to creative works" and to that end seeks to ensure that "the boundaries of copyright law [are] demarcated as clearly as possible." (*Fogerty, supra*, 510 U.S. at p. 527.) The statute achieves its objectives "by striking a balance between two subsidiary aims: encouraging and

14

rewarding authors' creations while also enabling others to build on that work." (*Kirtsaeng v. John Wiley & Sons, Inc.* (2016) 579 U.S. 197, 204, citing *Fogerty*, at p. 526.) "That is why . . . *Fogerty* insisted on treating prevailing plaintiffs and prevailing defendants alike — because the one could 'further the policies of the Copyright Act every bit as much as' the other." (*Kirtsaeng*, at p. 204, quoting *Fogerty*, at p. 527.) We see no similar need to strike a balance between conflicting aims under the Political Reform Act. Maximizing the number of meritorious suits through the Political Reform Act's private enforcement mechanism is of primary importance. Encouraging such claims is the best way to further the act's objective of ensuring that "[a]dequate enforcement mechanisms . . . be provided to public officials and private citizens." (§ 81002, subd. (f); see also *id.*, subd. (a) [finding that "[r]eceipts and expenditures in election campaigns should be fully and truthfully disclosed in order that the voters may be fully informed and improper practices may be inhibited"].) A rule allowing defendants to recover their attorney's fees whenever they prevail would discourage a large number of plaintiffs who may have colorable claims but " 'who dare not risk the financial ruin caused by an award of attorney fees if they ultimately do not succeed.' " (*Williams*, *supra*, 61 Cal.4th at p. 103.)

Although the Court of Appeal correctly recognized the difficulty in generalizing about the relative resources available to plaintiffs and defendants in Political Reform Act litigation (*Travis*, *supra*, 62 Cal.App.5th at p. 264 [noting the resources available to either side could " ' "run the gamut" ' "]), we do not believe this is a reason to reject the approach outlined in *Christiansburg*. Even if some plaintiffs may have sufficient resources to pursue their claims, that fact does not undermine

our conclusion that the statutory scheme here, which depends on an individual acting as a private attorney general to enforce a law for a public benefit, is more like the antidiscrimination laws at issue in *Christiansburg* (and those laws discussed *post*) than the copyright scheme at issue in *Fogerty*. Indeed, a rule subjecting unsuccessful plaintiffs to substantial financial risk in Political Reform Act cases, where the plaintiff often will have suffered no particularized harm, would discourage all but a few from seeking to enforce laws vital to ensuring transparency in the political process. We therefore cannot say that the factors justifying the *Christiansburg* rule are "absent" here. (*Fogerty*, *supra*, 510 U.S. at p. 523.)

The Court of Appeal's ruling below does not accurately capture the distinct interests of plaintiffs under the two statutory schemes, either. While the typical plaintiff in a copyright suit will generally be pursuing that plaintiff's own interests, the typical plaintiff under the Political Reform Act represents broader interests. As the *Hedgecock* court aptly recognized, the award of attorney's fees under the Political Reform Act is "designed to ameliorate the burden on the individual citizen who seeks to remedy what is essentially a collective wrong." (*Hedgecock*, *supra*, 183 Cal.App.3d at p. 817.)

A defendant's interests under the Copyright Act are also distinguishable from a defendant's interests under the Political Reform Act. The high court emphasized that the successful defense of a copyright action "may further the policies of the Copyright Act every bit as much" as the successful prosecution of an infringement claim. (*Fogerty*, *supra*, 510 U.S. at p. 527.) A successful defense of an action under the Political Reform Act, by contrast, merely confirms that the action lacks merit. As plaintiffs note, whereas a nonprevailing defendant in a Political

Reform Act lawsuit has violated the law and the public policy underlying the statutory scheme, a nonprevailing plaintiff is "guilty only of bringing an unsuccessful suit." There is no overriding equitable reason to award fees to a prevailing defendant in a Political Reform Act action unless the lawsuit "was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." (*Williams, supra*, 61 Cal.4th at p. 115.)[6]

This court interpreted yet another similarly worded fee statute as articulating an asymmetrical standard in *Williams, supra*, 61 Cal.4th 97. The statute at issue in that case, a provision of the California Fair Employment and Housing Act (§ 12900 et seq.; FEHA), provided that " 'the court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs . . . .' " (*Williams*, at p. 101.)[7] *Williams* recognized that the Legislature in enacting the FEHA fee provision, like Congress in enacting the similar title VII provision discussed in *Christiansburg*, had "sought 'to encourage persons injured by discrimination to seek judicial

---

[6]    Defendants contend plaintiffs in this case are pursuing their own self-interest rather than seeking to protect the public. We express no opinion on the merits of this factual claim, and we are not persuaded that this claim should alter how we interpret section 91003(a). Even when a plaintiff *does* have a distinct stake in the Political Reform Act enforcement action, a prevailing defendant's interests can be protected by an award of fees if the action is determined to be frivolous.

[7]    Our opinion in *Williams* cited to former section 12965, subdivision (b). (*Williams, supra*, 61 Cal.4th at p. 101.) Effective January 1, 2022, the Legislature renumbered former subdivision (b) of section 12965 as current subdivision (c)(6). (Stats. 2021, ch. 278, § 7; see Stats. 2022, ch. 420, § 25.) The language of this subdivision was left unaltered.

relief.' " (*Williams*, at p. 112, quoting Assem. Off. of Research, 3d reading analysis of Assem. Bill No. 1915 (1977–1978 Reg. Sess.) as amended Jan. 18, 1978, p. 1.) This policy, we went on to observe, would be "frustrated if attorney fee awards were routinely made to prevailing defendants." (*Williams*, at p. 112; see *id.* at pp. 113–114.) To promote the legislative goal of private enforcement, we found it "inescapable" that the Legislature intended a trial court's discretion in awarding fees to a prevailing defendant in FEHA cases "to be bounded by the *Christiansburg* rule, or something very close to it." (*Williams*, at p. 112.) Although the FEHA statute "did not 'distinguish between awards to FEHA plaintiffs and to FEHA defendants,' we concluded on the basis of legislative history and public policy that 'the Legislature intended trial courts to use the asymmetrical standard of *Christiansburg* . . . as to both fees and costs.' " (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 949 (*Pollock*), quoting *Williams*, at p. 109.) Applying the *Christiansburg* standard, and restating it without substantive revision, we held that "an unsuccessful FEHA plaintiff should not be ordered to pay the defendant's fees or costs unless the plaintiff brought or continued litigating the action without an objective basis for believing it had potential merit." (*Williams*, at pp. 99–100; *id.* at p. 115 ["A prevailing *defendant* . . . should not be awarded fees and costs unless the court finds the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so"].) Thus, both the United States Supreme Court and this court have adopted the same asymmetrical fee-shifting standard for certain attorney's fee awards in similar contexts involving enforcement of important public rights.

In light of the foregoing authorities, defendants' insistence that the Political Reform Act's fee statute "says what it means and means what it says" rings hollow. The United States Supreme Court rejected this plain meaning argument as applied to a similarly worded attorney's fees statute. The high court reasoned that the statutory language "does not even invite, let alone require" the "mechanical construction" that prevailing plaintiffs and defendants are entitled to fee awards on the same basis. (*Christiansburg*, *supra*, 434 U.S. at p. 418.) *Christiansburg* counsels that simply because a statute affords discretion to award attorney's fees to the prevailing party does not mean that discretion must be exercised in the same way for plaintiffs and defendants. (See *ibid*. [statute granting discretion to award fees to the prevailing party "provide[s] no indication whatever of the circumstances under which either a plaintiff or a defendant should be entitled to attorney's fees"].) We apply the same analysis here to section 91003(a) and reject a mechanical construction that awards fees to a prevailing defendant " 'on the same basis as a prevailing plaintiff.' " (*Christiansburg*, at p. 418.) Identifying the appropriate standard to guide the trial court's discretion depends instead on a construction of the statutory text in conjunction with the purpose underlying the governing statutory scheme. (See *id*. at pp. 418–419; *Fogerty*, *supra*, 510 U.S. at p. 527; accord, *Williams*, *supra*, 61 Cal.4th at pp. 103, 113–114.) Federal case law provides persuasive support for our conclusion that "even a neutrally-worded fee statute does not necessarily have an identical application to every prevailing party. Rather, when the statute establishes a flexible standard, a consideration of policy and [legislative] intent must guide the determination of the circumstances under which a particular party, or class of

parties (such as plaintiffs or defendants), is entitled to fees." (*Dorn's Transp. v. Teamsters Pension Trust Fund* (3d Cir. 1986) 799 F.2d 45, 49.)

We also find it significant that our application of the *Christiansburg* standard in Political Reform Act cases is consistent with the standard used for numerous public laws designed to be enforced by individuals acting as private attorneys general and in other similar contexts. (See, e.g., *Browder v. City of Moab* (10th Cir. 2005) 427 F.3d 717, 723 [applying the *Christiansburg* standard to a claim for attorney's fees by a defendant prevailing on claims under the Clean Water Act (Federal Water Pollution Control Act) and the Resource Conservation and Recovery Act]; *Lane v. Residential Funding Corp.* (9th Cir. 2003) 323 F.3d 739, 748 [applying the *Christiansburg* standard to an action under the Real Estate Settlement Procedures Act]; *Bercovitch v. Baldwin School, Inc.* (1st Cir. 1999) 191 F.3d 8, 10–11 [applying the *Christiansburg* standard to attorney's fees awarded to a prevailing defendant under the Americans with Disabilities Act]; *Marbled Murrelet v. Babbitt* (9th Cir. 1999) 182 F.3d 1091, 1095 [applying the *Christiansburg* standard to a defendant's claim for fees under the Endangered Species Act because that act and the Civil Rights Act of 1964 "have a common purpose"]; *Com'rs Court of Medina Cy., Tex. v. U.S.* (D.C. Cir. 1982) 683 F.2d 435, 439 [declaring that the *Christiansburg* standard generally applies to fee awards under the Voting Rights Act, except "where the procedural posture of a particular case renders the general rule inapplicable"]; *Consol. Edison Co. v. Realty Investment Assoc.* (S.D.N.Y. 1981) 524 F.Supp. 150, 153 ["Congress' design of encouraging citizen suits [under the Clean Air Act] would be substantially frustrated were [the statute]

read to permit prevailing defendants to recover attorneys' fees with the same relative ease that successful plaintiffs enjoy"]; accord, *Arcese v. Daniel Schmitt & Co.* (Mo.Ct.App. 2016) 504 S.W.3d 772, 789 [applying the *Christiansburg* standard to actions under the Missouri Merchandising Practices Act, a consumer protection statute].) In those contexts, as here, plaintiffs would be discouraged from bringing colorable claims to enforce laws for the benefit of the public if they faced the prospect of paying a defendant's attorney's fees whenever their suit ultimately proved unsuccessful. (See generally *Weinreb*, *supra*, 168 Cal.App.3d at p. 538 ["These decisions provide an impressive array of authority in aid of interpretation of a political reform enactment which is similarly dependent upon private litigation as a means of enforcement"].)

We are mindful of the financial burden that an action under the Political Reform Act can impose on some defendants, who are themselves participants in the political process. But the expense of defending against a lawsuit that has objective merit under the Political Reform Act, even when the lawsuit is ultimately unsuccessful, is fairly characterized "as a cost of political participation." (*Hedgecock*, *supra*, 183 Cal.App.3d at p. 818.) California's campaign disclosure laws, after all, were enacted to "give citizens a basis for the faith and trust which must lie at the heart of our political process." (Ballot Pamp., Primary Elec., *supra*, rebuttal to argument against Prop. 9, p. 37.) Faith, trust, and transparency are vital aspects of self-government, and measures to promote these values serve compelling interests. Given the number of state and local campaigns and the multiplicity of PACs, the voters were aware as early as 1974 that meaningful compliance with these disclosure laws depended on private enforcement actions. We

agree with *Hedgecock* that "the need to avoid discouraging enforcement of the act must be deemed paramount. . . . While we understand the financial burden a suit such as this can impose, in view of the fundamental need to enforce high standards of political ethics we do not believe it unfair to treat the price of defending against a reasonably grounded but ultimately unsuccessful allegation as a 'cost of doing business' in politics which is appropriately borne by the political participant." (*Hedgecock*, at pp. 818–819.) Moreover, as previously noted (see fn. 6, *ante*), a prevailing defendant is not entirely without recourse. When a trial court determines that an action was objectively without foundation, the prevailing defendant may still recover attorney's fees. (See *Williams*, *supra*, 61 Cal.4th at p. 115.)

In sum, we conclude the *Christiansburg* standard applies to discretionary awards of both attorney's fees and costs to prevailing defendants under the Political Reform Act. The statute at issue here is not comparable to the one discussed in *Fogerty*. Instead, we conclude applying an asymmetrical standard to fee awards under the Political Reform Act is consistent with the principles outlined by our high court in *Christiansburg*. To reiterate, under the asymmetrical standard, a prevailing *defendant* "should not be awarded fees and costs unless the court finds the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so." (*Williams*, *supra*, 61 Cal.4th at p. 115; accord, *Christiansburg*, *supra*, 434 U.S. at p. 421 [prevailing defendants may recover only when "the plaintiff's

action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith"].)[8]

## III.

The trial court awarded defendants attorney's fees under both Government Code section 91003(a) as well as Code of Civil Procedure section 1021.5. The Court of Appeal upheld the award under Government Code section 91003(a) (*Travis, supra,* 62 Cal.App.5th at p. 263) but never considered whether plaintiffs objectively brought their suit without foundation or continued to prosecute it after it clearly became so. (See *Williams, supra,* 61 Cal.4th at p. 115.) Nor did the Court of Appeal consider the award's validity under Code of Civil Procedure section 1021.5.

Whether defendants have demonstrated that plaintiffs' lawsuit was objectively groundless — or whether the fee award could instead be upheld under Code of Civil Procedure section 1021.5 — is a matter for the Court of Appeal to determine in the first instance. We express no view on the merits of awarding attorney's fees under either statute. We reverse the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion. (See *Pollock, supra,* 11 Cal.5th at pp. 929, 951.)

---

[8] We perceive no material difference between the standard set forth in *Williams, supra,* 61 Cal.4th at p. 115 and the standard in *Christiansburg, supra,* 434 U.S. at p. 422. Although they use slightly different phrasing, they are functionally equivalent and embody a single standard which we apply here.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**CANTIL-SAKAUYE, J.**[*]

---

[*] Retired Chief Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Travis v. Brand

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 62 Cal.App.5th 240
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S268480
**Date Filed:** January 30, 2023

---

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  Malcolm H. Mackey

---

**Counsel:**

The Sutton Law Firm, Bradley W. Hertz, James R. Sutton, Nicholas L. Sanders; Shumener, Odson & Oh, Betty M. Shumener, John D. Spurling and Daniel E. French for Plaintiffs and Appellants.

Carlson & Messer and Jeanne L. Zimmer for Defendant and Respondent Nils Nehrenheim.

Gabriel & Associates and Stevan Colin for Defendants and Respondents Bill Brand, Brand for Mayor 2017 and Linda Moffat.

Law Offices of Bobak Nayebdadash and Bobak Nayebdadash for Defendants and Respondents Wayne Craig and Rescue Our Waterfront, P.A.C.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Betty M. Shumener
550 South Hope Street, Suite 1050
Los Angeles, CA 90071
(213) 344-4201

Jeanne L. Zimmer
5901 West Century Boulevard #1200
Los Angeles, CA 90045
(310) 265-2699

Stevan Colin
1709 Haynes Lane
Redondo Beach, CA 90278
(310) 379-8655